IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | | |
|---|---|---|
| Teamsters Local Union No. 507, | ) | CASE NO.:   1:08 CV 1830 |
| | ) | |
| Plaintiff, | ) | JUDGE DONALD C. NUGENT |
| | ) | |
| v. | ) | |
| | ) | |
| Earnest Machine Products Company, | ) | MEMORANDUM OPINION |
| | ) | |
| Defendant. | ) | |
| | ) | |

This matter is before the Court on the briefs filed by both parties. Plaintiff filed a "Brief of Plaintiff Teamsters Local Union No. 507" (ECF #10). While Plaintiff did not file a motion with its Brief, Plaintiff seeks a declaration that the Defendant Earnest Machine Products Company (the "Company") must arbitrate the grievance of Joseph Nagy in accordance with the Collective Bargaining Agreement ("CBA") in force between the parties. As this is the relief Plaintiff seeks in its Complaint, the Court will treat this "brief" as a motion for summary judgment. The Company has filed a "Brief of Defendant Earnest Machine Products Company" (ECF #11) and Plaintiff has filed a "Reply Brief for its Motion for Summary Judgment."(ECF #12).

## PROCEDURAL AND FACTUAL BACKGROUND

Plaintiff, Teamsters Local Union No. 507 ("Local 507"), filed a Complaint for Injunctive

Relief asserting that the Defendant Company breached the CBA by failing to arbitrate the grievance of Joseph Nagy as required by the CBA in violation of Section 301 of the Labor-Management Relations Act of 1947 ("LMRA"), 29 U.S.C. § 185.

The CBA at issue is effective between the parties from September 1, 2005 to September 1, 2010.  A copy of the CBA is attached to the Complaint as Exhibit A. The CBA contains a grievance and binding arbitration provision in Article XIV which provides in pertinent part:

> If any controversy or difference shall arise between the Union and the Employer...with respect tot he interpretation or effect of the Agreement with regard to the rights, obligations, or liabilities of the parties hereunder or otherwise...[it] must be submitted in writing.... In the event the grievance is not settled or otherwise adjusted in the ...grievance meeting, the Union shall have the right to submit the grievance to arbitration by notifying the Employer of its intention to arbitrate said grievance.... The procedure set forth in the Article shall be the exclusive method of redressing grievances between the parties, and decisions of arbitrators...shall be final and binding on the Union, the Employer, and the employees.

Article XV of the CBA provides in relevant part:

> any employee who participates in any unlawful strike, slowdown or other stoppage of work is subject to immediate discharge without recourse to the grievance procedure.

Local 507 alleges that the Company violated the CBA when it summarily terminated bargaining unit member and Union Steward Joseph Nagy on or about July 2, 2008, without cause for his alleged engagement in a work slowdown.  The Company counters that it received and investigated a report from a Union member that Mr. Nagy had instructed her to slow the pace of her work.  After its investigation, the Company concluded that the report was credible that Mr. Nagy had orchestrated and participated in a slowdown of work in violation of Article XV of the CBA and the Company discharged Mr. Nagy.  Pursuant to Article XIV of the CBA, Mr. Nagy

2

filed a written grievance (Ex. B to the Complaint) of his "unjust termination" on July 7, 2008. Mr. Nagy and Local 507 dispute that Mr. Nagy organized or participated in a work slow down. By letter dated July 9, 2008, the Company informed Mr. Nagy and Local 507 that it refused to process Mr. Nagy's grievance based on Article XV which permits immediate discharge without recourse to the grievance procedure.  By letter dated July 16, 2008, Counsel for Local 507 demanded a grievance meeting be held between the Company and Local 507 to determine the factual basis for the alleged work slowdown.  The Company responded by letter that it was continuing to refuse to process the Nagy Grievance based upon the language of Article XV.  Thereafter, on July 29, 2008, Local 507 filed the instant action seeking a permanent injunction requiring the Company to comply with the CBA and submit to arbitration all disputes and issues arising from the Nagy Grievance and a declaratory judgment and order that the Company is required to arbitrate Mr. Nagy's claim concerning the factual basis for its discharge of Mr. Nagy before the labor arbitrator selected, and to consider the merits of the Nagy Grievance in its entirety under the applicable CBA.

**SUMMARY JUDGMENT STANDARD**

Summary judgment is appropriate when the Court is satisfied "that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c).  A fact is "material" only if its resolution will affect the outcome of the lawsuit. *Anderson v. Liberty Lobby, Inc*., 477 U.S. 242, 248 (1986).  Accordingly, proper summary judgment analysis entails "the threshold inquiry of determining whether there is the need for a trial–whether, in other words, there are any genuine factual issues that properly can be

3

resolved only by a finder of fact because they may reasonably be resolved in favor of either party." *Id*. at 250.

## ANALYSIS

Local 507 contends that it is entitled to arbitrate the Nagy Grievance and any questions concerning the factual basis for an allegation of a work slowdown before a labor arbitrator under the provisions of the CBA. It argues that unless the matter is subject to arbitration, there is no recourse for any termination that the employer unilaterally concludes involves a "slowdown." The CBA outlines certain prohibited actions and a determination whether these actions took place is subject to arbitration.

In *Steelworkers v. Warrior & Gulf Navigation Co.*, 363 U.S. 574, 585 (1960), the Supreme Court held that courts should not become enmeshed in construing the merits of a grievance to determine arbitrability. In *Steelworkers*, the CBA contained a broad arbitration clause like the one in this case and an exemption from arbitration for "matters which are strictly a function of management." The company refused to arbitrate a grievance over subcontracting and the union sued to compel arbitration. The Supreme Court held that the determination of what is a "function of management" under the CBA is for the arbitrator to decide. The Court noted that if there is an arbitration clause in the CBA, the test is whether there is an "express provision excluding a particular grievance from arbitration." If not, "only the most forceful evidence of a purpose to exclude the claim from arbitration can prevail." 363 U.S. 585. Despite the provision excluding matters which are strictly a function of management from arbitration, the Supreme Court held that the subcontracting dispute had to be arbitrated.

Thereafter, the Ninth Circuit Court of Appeals addressed a situation very similar to the

4

one at bar.  In *Los Angeles Paper Bag Co. v. Printing Specialties and Paper Products Union, Dist. Council No. 2, Nat. Printing Pressmen and Assistants' Union of North America, AFL-CIO*, 345 F. 2d 757 (9th Cir. 1965), twelve employees were discharged for an alleged breach of a no strike clause.  The exclusionary clause stated that in the event of a work stoppage in violation of the CBA the Company could discipline the participating employees and "...any such discipline shall not constitute a grievance within the meaning of Article II.  The Company will discuss with the Union any discharges under this provision but such discharges will not be subject to the grievance procedure and arbitration." *Id.* at 758.   The employees filed grievances of their discharges and the employer refused to arbitrate claiming that it had the sole right to determine if the no strike clause was breached and that the employees had no recourse to arbitration.

The Court found that the CBA did not have any clause giving the employer an absolute, incontestable right to decide when a strike or unauthorized work stoppage has in fact occurred.  Rather, the Court interpreted the CBA as giving the employer the right to make an initial assumption that a work stoppage has occurred and to proceed to act thereon.  However, if, as in the case at bar, "the employees affected by Employer's claim of unauthorized work stoppage challenge the factual truth of such assumption by filing a claim of grievance, then an issue is presented which, under the Agreement, must be submitted to arbitration." *Id.* at 759.  The Court noted that if the employer's contention that it was the sole decider of whether an unauthorized work stoppage had occurred within the meaning of the exclusionary clause of the CBA were sustained, such finding would "emasculate the arbitration provision of the contract whenever the Employer saw fit to unilaterally interpret any action of the employees as a walkout or stoppage.  That is not what the Agreement says." *Id*.

5

Like the employer in *Los Angeles Paper Bag*, the Company here asserts that the language of Article XV is a clear and unambiguous exception to the grievance procedure in Article XIV and gives it the unilateral right to immediately discharge an employee who engages in a slowdown of work. The Company contends that the extrinsic evidence as to the meaning of the CBA offered by Local 507 in the declaration of Al R. Mixon is unnecessary and improper[1] and that the only case law in the Sixth Circuit supports the Company's actions.

As in *Los Angeles Paper Bag*, the exclusionary provision in this CBA does not provide that the Company is the sole arbiter of what is an "unlawful strike, slowdown or other stoppage of work".  The CBA does not define "slow down." At best Article XV is silent regarding who should make the determination of what a slow down is and whether it occurred. Based upon these findings, the Court concludes that the balance struck by the Court in *Los Angeles Paper Bag* provides the best solution to effectuate the terms of the CBA without emasculating the provisions of the broad arbitration clause.  Thus, as in *Los Angeles Paper Bag*, the Company may make the initial assumption of a work slowdown, however if the affected employee challenges the factual truth of the work slowdown by filing a grievance then an issue is presented, which under Article XIV, must be submitted to an arbitrator. Any other conclusion would emasculate the broad arbitration clause agreed to by the parties.

Moreover, this interpretation is in line with the Sixth Circuit precedent cited by the Company.  In *District 50, United Mine Workers of America v. Chris-Craft Corp.*, 385 F. 2d 946 (6th Cir. 1967), the CBA at issue contained a narrow arbitration clause over "working conditions,

---

[1] The Court finds that the declaration of Mr. Mixon is unnecessary to the analysis of this motion and has not considered it in this opinion.

layoffs and discharges" but specifically excluded "strikes, sit-downs, boycott or any unlawful acts that interfere with the Company's operation or the production or sale of its products.  Any violation of the foregoing provisions may be made subject of disciplinary action including discharge, and such action may not be raised as a grievance under this Agreement."  The Sixth Circuit distinguished the facts in *Chris-Craft* from *Los Angeles Paper Bag* in finding that the exclusion applied.  Specifically, the Court noted that in *Chris-Craft*, unlike *Los Angeles Paper Bag*, there was no factual dispute concerning whether an unauthorized work stoppage had occurred.  The employees in *Chris-Craft* admitted that they had participated in an unauthorized work stoppage.  Further, the arbitration clause in *Chris-Craft* was narrow and did not contain the broad clause providing for arbitration of differences arising out of the interpretation, application or alleged violation of any of the express provisions of this Agreement that was part of the CBA in *Los Angeles Paper Bag*.

This case is distinguishable from *Cris-Craft* for the same reasons as *Los Angeles Paper Bag*.  In this case the Mr. Nagy and Local 507 dispute the factual allegations that he organized or participated in a work slowdown.

The Court is mindful of the negotiation process that occurs between the parties to arrive at an agreement which is manifested in the CBA.  Implicit in the final Agreement is the recognition that the parties have mutually bargained on the issues.  Thus, there is the normal give and take required in labor-management negotiations to come to a final agreement memorialized and adopted in the CBA.

Article XV of the CBA grants the employer the sole discretion to terminate an employee who "participates in any unlawful strike, slow down or other stoppage of work."  Local 507 gave

7

the Company the right to terminate in Article XV, but did not give the Company the right to be indiscriminately arbitrary.

To adopt the rationale of the Company, the Company has complete authority to decide punishment for any real or claimed activity described in Article XV without recourse for the employee. That is not a fair reading of the CBA.

A fair reading of Article XV gives the employer complete discretion to determine employee punishment up to immediate discharge if such employee participates in any unlawful strike, slowdown or other stoppage of work. And, if any employee disciplined pursuant to Article XV disputes the Company's claim, the allegation as to whether the employee actually did participate in any unlawful strike, slowdown or other stoppage of work is subject to the Arbitration provision contained in Article XIV.

Therefore, Mr. Nagy's claim that he did not engage in any activity in violation of Article XV of the CBA may be arbitrated under Article XIV of the CBA. The Arbitrator's authority is limited to the determination of whether Mr. Nagy participated in any unlawful strike, slow down or other stoppage of work. If the Arbitrator finds he did, then the termination is valid. If the Arbitrator finds he did not, then the termination was in violation of the CBA.

## CONCLUSION

For the reasons set forth above, Plaintiff's Motion for Summary Judgment is granted and the parties are directed to proceed with the grievance and arbitration process on the Nagy Grievance in accordance with Article XIV of the CBA to determine if Mr. Nagy participated in "any unlawful strike, slow down or other stoppage of work" in violation of Article XV of the CBA.

    IT IS SO ORDERED.


                                                                  _/s/Donald C. Nugent_  
                                                                  DONALD C. NUGENT  
                                                                  United States District Judge


DATED:  __January 14, 2009__